## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UGUIMAR FELIPE REZENDE** ) <br> ) <br> ) <br> *Petitioner,* ) <br> v. ) <br> ) <br> PAMELA BONDI, *in his official capacity as* ) <br> *Attorney General Of The United States;* ) <br> ) <br> KRISTI NOEM, *in her official capacity as* ) <br> *Secretary of the Department of Homeland* ) <br> *Security;* ) <br> ) <br> PATRICIA HYDE, *Acting Field Office* ) <br> *Director Enforcement & Removal Operations,* ) <br> *U.S. Immigration and Customs Enforcement* ) <br> *Boston Field Office;* ) <br> ) <br> Warden of Buffalo Federal Detention Facility ) <br> (Batavia, NY) ) <br> ) <br> ) <br> *Respondents.* ) | **Case No.:  To be determined.** <br><br><br> **PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241  AND EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND STAY OF TRANSFER** |

### I. INTRODUCTION

1.      Petitioner Uguimar Felipe Rezende (A# 208-748-768) is a native and citizen of Brazil who entered the United States without inspection at or near Hidalgo, Texas, on December 18, 2015. He is married to a U.S. citizen, Raylla Caroline Reis Matos, and is the father of three U.S. citizen children.

2.      On September 15, 2024, U.S. Citizenship and Immigration Services approved the Form I-130 Petition for Alien Relative filed by Petitioner's U.S. citizen spouse. This approval makes him eligible to seek a Provisional Unlawful Presence Waiver (Form I-601A) — a process

that requires the termination or dismissal of his removal proceedings so that he may complete immigrant visa processing abroad.

3.      Petitioner's removal case before the Boston Immigration Court (Chelmsford hearing location) is currently administratively closed. He intends to move to terminate the proceedings in light of *Matter of Coronado Acevedo*, 28 I&N Dec. 648 (BIA 2022), which clarified that DHS and the Immigration Courts have authority to terminate cases to allow eligible noncitizens to seek provisional waivers.

4.      Despite this clear path toward lawful status, Petitioner is detained by ICE at the Buffalo Federal Detention Facility under 8 U.S.C. § 1226, according to DHS's own Notice of Custody Determination. His prolonged detention without an individualized bond hearing, together with the threat of transfer to another jurisdiction, obstructs his ability to pursue lawful immigration relief, maintain access to counsel, and protect his U.S. citizen family's constitutional interests.

5.      Petitioner's U.S. citizen spouse recently gave birth to twin babies and remains in the immediate postpartum recovery period under medical restrictions. The couple also has a five-year-old son who depends heavily on his father for care and support. Petitioner's ongoing detention leaves his wife physically vulnerable and struggling to care for three very young children — including two newborns — during a critical recovery period, causing extraordinary hardship to the entire family.

6.      Because his immigration case, family, and attorneys are all in Massachusetts, and his detention in Buffalo has severely impaired his ability to prepare his case and care for his medically recovering spouse and three U.S. citizen children, Petitioner seeks an order transferring him to a Massachusetts detention facility under the authority of the ICE Boston Field Office so he can maintain meaningful access to counsel and family support while this Court adjudicates his claims.

## II. JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action under 28 U.S.C. § 2241, which grants district courts authority to issue writs of habeas corpus; 28 U.S.C. § 1331, which provides federal question jurisdiction; and Article I, § 9, cl. 2 of the United States Constitution (the Suspension Clause). Petitioner is in the custody of U.S. Immigration and Customs Enforcement pursuant to the authority of the Boston Field Office, where he was arrested and initially taken into ICE custody. His removal proceedings are pending before the Boston Immigration Court, his spouse and children reside in Massachusetts, and his counsel is located here.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(e) and 2241(d) because a substantial part of the events giving rise to this action — including Petitioner's arrest, his family's residence, and his immigration proceedings — occurred in Massachusetts. Naming the Acting Field Office Director of the Boston ERO Office (Patricia Hyde) as the immediate custodian further supports venue. Jurisdiction attached upon the filing of this petition and cannot be defeated by ICE's subsequent decisions about detention location, *see Ex parte Mitsuye Endo*, 323 U.S. 283, 306; *Rumsfeld v. Padilla*, 542 U.S. 426, 440.

## III. PARTIES

9.      Petitioner Uguimar Felipe Rezende (A# 208-748-768) is a native and citizen of Brazil, currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Buffalo Federal Detention Facility in Batavia, New York.

10.      Respondent Pamela Bondi is the Attorney General of the United States. She oversees the immigration court system, which is housed within the Executive Office for Immigration Review (EOIR) and includes all Immigration Judges and the Board of Immigration Appeals. She is sued in her official capacity.

11.    Respondent Kristi Noem is the Secretary of the U.S. Department of Homeland Security (DHS). DHS oversees ICE and is responsible for administering and enforcing the immigration laws. Secretary Noem is the ultimate legal custodian of Petitioner and is sued in her official capacity.

12.    Respondent Thomas Brophy is the Field Office Director of ICE Enforcement and Removal Operations (ERO) in the Buffalo Field Office. In this capacity, he exercises authority over detention operations at the Buffalo Federal Detention Facility, where Petitioner is currently held. Mr. Brophy is a legal custodian of Petitioner and is sued in his official capacity.

13.    Respondent Patricia Hyde is the Acting Field Office Director of ICE Enforcement and Removal Operations in the Boston Field Office, which arrested Petitioner and exercises authority over his custody and removal case. She is sued in her official capacity as a custodian with direct control over the decision to transfer or release Petitioner.

14.    Respondent Warden of the Buffalo Federal Detention Facility is Petitioner's immediate physical custodian and is sued in that official capacity.

## IV. FACTUAL BACKGROUND

15.    Petitioner has been in ICE custody since on or about September 29, 2025, and is currently detained at the Buffalo Federal Detention Facility in Batavia, New York. He has resided in the United States since 2015 and has deep and enduring ties to Massachusetts, where he lives with his U.S. citizen wife and children. His medical and employment records are located in Massachusetts, reflecting his long-term presence and integration into the community.

16.    Petitioner's prolonged detention without an individualized bond hearing obstructs the preparation of his defense, impedes his access to counsel, and raises serious due process

concerns. The Second Circuit has recognized that immigration detainees must have meaningful access to their attorneys, *see Elkimya v. Department of Homeland Security*, 484 F.3d 151, 154–55.

## V. LEGAL ARGUMENT

### A. ICE Detention and Transfer Threat Violate the Fifth Amendmen

17.    The Due Process Clause of the Fifth Amendment guarantees not only the right to counsel and access to the courts, but also protects noncitizens from being deprived of meaningful judicial review merely because they entered without inspection. The Supreme Court has long made clear that restrictions on habeas corpus for noncitizens raise serious constitutional concerns. *See INS v. St. Cyr*, 533 U.S. 289, 300–01 (2001) (habeas review remains available as a constitutional safeguard for noncitizens facing removal); *Calcano-Martinez v. INS*, 533 U.S. 348, 350–52 (2001).

18.    The First Circuit has recognized that prolonged immigration detention without individualized review raises serious due process issues. *Reid v. Donelan*, 819 F.3d 486, 494–95 (1st Cir. 2016) (acknowledging habeas jurisdiction and due process concerns for noncitizens held under § 1226). Other circuits, including the Second Circuit, have emphasized that immigration detainees must have meaningful access to their attorneys and the courts. *See Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 154–55 (2d Cir. 2007); *Hechavarria v. Sessions*, 891 F.3d 49, 56–57 (2d Cir. 2018).

19.    Petitioner entered the United States without a visa and has since built deep and enduring ties to Massachusetts, where he resides with his U.S. citizen spouse — whom he married in Marlborough, Massachusetts, on July 14, 2023 — and their three U.S. citizen children. His pursuit of lawful status is active, supported by the approved Form I-130 Petition for Alien Relative filed by his spouse. Petitioner now intends to seek termination of his administratively closed removal proceedings to apply for a Provisional Unlawful Presence Waiver (Form I-601A) and complete

consular processing for an immigrant visa abroad, consistent with *Matter of Coronado Acevedo*, 28 I&N Dec. 648 (BIA 2022). Despite his eligibility to pursue this relief, his continued detention at the Buffalo Federal Detention Facility without an individualized bond hearing impedes his access to counsel, obstructs the preparation of his immigration case, and violates the due process protections guaranteed by the Fifth Amendment.

### B. Unlawful Search, Seizure, and Suppression of Evidence of Removability

20.    In addition to the unlawful detention and threatened transfer, Petitioner was subjected to an unconstitutional search and seizure at the time of his arrest by ICE agents. According to sworn statements from his spouse, ICE officers entered the premises where Petitioner was working, without presenting a warrant or probable cause, struck him, forced him to the ground, and deployed a taser without justification or provocation.

21.    The Fourth Amendment, as applied to federal immigration enforcement, protects noncitizens from unreasonable searches and seizures. When ICE officers effectuate an arrest in flagrant violation of constitutional limits — through warrantless entry, lack of probable cause, or the use of excessive force — courts recognize that such conduct is egregious and triggers suppression of evidence of alienage or removability. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040–41 (recognizing suppression as a remedy in immigration proceedings for egregious Fourth Amendment violations); *Oliva-Ramos v. Attorney General*, 694 F.3d 259, 279–80 (holding that evidence must be suppressed when obtained through egregious constitutional violations by ICE).

22.    ICE agents' use of violent, unprovoked physical force also violates the Fifth Amendment's Due Process Clause, which protects all persons from arbitrary and abusive government conduct. The Supreme Court has made clear that force by federal officers must be objectively reasonable, *see Graham v. Connor*, 490 U.S. 386, 394–95, and that civil detainees are protected from objectively unreasonable force, *see Kingsley v. Hendrickson*, 576 U.S. 389, 396–97.

Government conduct that "shocks the conscience," including grossly excessive force or physical abuse, offends substantive due process. *See Rochin v. California*, 342 U.S. 165, 172–73.

23.    These constitutional violations go to the heart of Petitioner's removability proceedings. The Supreme Court has recognized that egregious Fourth Amendment violations — especially those involving physical abuse — can require suppression of identity and alienage evidence. *Lopez-Mendoza*, 468 U.S. at 1050. Here, ICE's warrantless and violent arrest lacked probable cause and was carried out with objectively unreasonable force. The resulting evidence of Petitioner's identity and removability, obtained through this unconstitutional seizure, must be suppressed. Without such evidence, Respondents cannot lawfully continue detention or removal proceedings.

24.    Additionally, the unprovoked use of tasers and physical violence violated DHS's own use-of-force policies, which require that force be necessary, proportionate, and deployed only when lesser means are insufficient. While this Court need not defer to internal manuals, *see Loper Bright Enters. v. Raimondo*, No. 22-451 (U.S. June 28, 2024), such guidance underscores the arbitrariness and unlawfulness of Respondents' conduct.

25.    Because Petitioner's detention stems directly from an unconstitutional search, seizure, and use of force, it is arbitrary, procedurally defective, and substantively unlawful under both the Fourth and Fifth Amendments. This Court should grant the writ of habeas corpus, suppress any evidence of alienage or removability derived from the unlawful arrest, and order Petitioner's immediate release. In the alternative, the Court should order his transfer to Massachusetts to preserve access to counsel and family, or require Respondents to provide an individualized bond hearing within 24 hours.

### C. The Court Has Authority to Preserve Jurisdiction and Prevent Mootness

26.     This Court has habeas jurisdiction under **28 U.S.C. § 2241**. The Supreme Court has held that jurisdiction attaches at filing and cannot be defeated by subsequent transfer. *See Ex parte Mitsuye Endo*, 323 U.S. 283, 306; *Rumsfeld v. Padilla*, 542 U.S. 426, 440 (2004). The **First Circuit** has long recognized habeas as the vehicle to challenge unlawful immigration detention. *See Reid v. Donelan*, 819 F.3d 486, 494–95.

27.     Petitioner was arrested by ICE's **Boston Field Office**, his removal case is pending in the **Boston Immigration Court**, and his family and counsel are in Massachusetts. These facts establish a strong nexus to this District and support venue and jurisdiction here even though ICE has placed him in Buffalo. The Court may exercise its authority to preserve jurisdiction and order his return or release to prevent mootness.

28.     Courts apply a familiar four-factor test for preliminary relief: likelihood of success on the merits, irreparable harm, balance of equities, and the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34–35 (2d Cir. 2010). Each factor weighs heavily for Petitioner.

29.     First, he is likely to succeed on the merits. Prolonged detention without notice, individualized assessment, or opportunity to be heard violates the Due Process Clause and 28 U.S.C. § 2241. *See Reid*, 819 F.3d at 494–95; *Hechavarria*, 891 F.3d at 56–57.

30.     Second, he faces irreparable harm. His wife is in **postpartum recovery after delivering twins** and caring for a five-year-old alone. The loss of spousal support during this medically vulnerable period and the obstruction of attorney access are harms that cannot be remedied later. *See Elkimya*, 484 F.3d at 154–55.

31.     Third, the balance of equities tips strongly toward Petitioner. ICE suffers no prejudice from providing an individualized custody review or from housing him within

Massachusetts, while Petitioner risks losing his only meaningful chance to pursue lawful relief. *See Rajah v. Mukasey*, 544 F.3d 449, 453–54 (2d Cir. 2008).

32.    Finally, the public interest favors protecting due process and access to counsel over administrative convenience. Prolonged detention without bond hearings undermines confidence in the rule of law. *See Elkimya*, 484 F.3d at 154–55.

**D. This Court Should Exercise Independent Judicial Interpretation Under *Loper Bright* to Safeguard Petitioner's Rights**

33.    Respondents may argue that internal DHS or EOIR practices permit denial of a bond hearing. That position cannot stand after the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, No. 22-451 (U.S. June 28, 2024). In *Loper Bright*, the Court rejected *Chevron* deference and held that federal courts must exercise their own independent judgment in interpreting the law and "may not defer to an agency interpretation of the law simply because a statute is ambiguous." Agency gloss is entitled only to whatever persuasive value it carries; it is never controlling.[9]

34.    Applied here, *Loper Bright* requires this Court to interpret the governing detention regulations independently. The text of 8 C.F.R. §§ 1003.14 and 1003.20 and the Immigration and Nationality Act (INA) requires an individualized custody determination.

35.    Thus, even if ICE were to rely on its internal practices or agency manuals to justify the denial of a bond hearing, those materials cannot override the plain text of the regulations or this Court's duty to preserve access to counsel and judicial review. *Loper Bright* confirms that this Court must reject deference to nonbinding agency interpretations and instead apply the law as written.

**E. Even if Respondents Invoke *Matter of Yajure Hurtado*, It Does Not Foreclose Habeas Relief and Raises Serious Constitutional Concerns**

36.     Respondents may attempt to rely on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which concluded that Immigration Judges lack jurisdiction to conduct bond hearings for certain individuals who entered without inspection and are therefore categorized as "arriving aliens" under INA § 235(b)(2)(A). That decision, however, is both legally flawed and constitutionally suspect.

37.     First, *Yajure Hurtado* is an administrative ruling of the Board of Immigration Appeals. While binding on Immigration Judges, it does not control the scope of this Court's habeas jurisdiction under 28 U.S.C. § 2241. Federal courts retain independent authority to determine whether detention is lawful, and to provide equitable relief when confinement violates statutory or constitutional guarantees. The Suspension Clause and longstanding habeas jurisprudence preserve this Court's power to intervene where detention is prolonged, arbitrary, or unsupported by the statutory framework. See *INS v. St. Cyr*, 533 U.S. 289, 300–01 (2001); *Hechavarria v. Sessions*, 891 F.3d 49, 56–57 (2d Cir. 2018).

38.     Second, the reasoning of *Yajure Hurtado* misinterprets the statutory scheme. INA § 235(b)(2)(A) governs individuals who are "seeking admission" at the border or ports of entry. It does not extend to long-term residents like Petitioner who have resided in the United States for decades, who have established family and community ties, and whose cases are actively pending in Immigration Court. Courts across jurisdictions have rejected the government's attempts to conflate the "applicant for admission" designation with the present-tense act of "seeking admission." See *Romero v. Hyde*, 2025 WL 2403827, at *10 (D. Mass. Aug. 19, 2025); *Lopez Benitez v. Francis*, 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025); *Martinez v. Hyde*, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025). These authorities confirm that detention in the interior of the United

States falls within the discretionary regime of § 1226, not the mandatory detention regime of § 1225.

39.    Third, even if the BIA's interpretation were accepted, it would raise grave constitutional concerns. The Fifth Amendment protects all persons in the United States, regardless of manner of entry, from arbitrary detention. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). By categorically foreclosing bond hearings for entire classes of noncitizens with longstanding residence, citizen children, and pending applications for relief, *Yajure Hurtado* effectively eliminates individualized custody review and shifts the burden entirely onto habeas proceedings. This outcome not only contradicts congressional intent but also undermines due process, as the Supreme Court has repeatedly emphasized that "freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

40.    Finally, the decision in *Yajure Hurtado* cannot override this Court's obligation under *Loper Bright Enterprises v. Raimondo*, No. 22-451 (U.S. June 28, 2024), which rejected Chevron deference and reaffirmed that courts must independently interpret the law. Agency interpretations, including those of the BIA, may be given weight only to the extent they are persuasive, but they cannot control judicial construction of statutes. Here, the plain text of the INA, reinforced by multiple district court decisions, confirms that Petitioner's detention falls under § 1226 and requires a bond hearing.

41.    Accordingly, this Court should reject Respondents' reliance on *Matter of Yajure Hurtado*, recognize its constitutional deficiencies, and hold that Petitioner remains entitled to meaningful custody review under § 1226 and the Due Process Clause.

**F. Statutory Basis for Detention Confirms Petitioner Is Held Under § 1226, Not § 1225.**

42.    The core question in this case is whether Petitioner is detained under 8 U.S.C. § 1225(b)(2), which mandates detention for certain individuals "seeking admission," or under 8 U.S.C. § 1226, which authorizes discretionary detention subject to an individualized bond hearing.

43.    Respondents may argue that Petitioner is subject to § 1225(b)(2)(A), but the record demonstrates otherwise. DHS's own Notice of Custody Determination explicitly states that Petitioner is detained "pursuant to the authority contained in section 236 of the Immigration and Nationality Act," which is codified at 8 U.S.C. § 1226. Courts have consistently found that where DHS cites § 1226 as the detention authority, the government cannot retroactively recharacterize custody as mandatory under § 1225. See *Hernandez Marcelo v. Trump*, No. 3:25-cv-00094-RGE-WPK (S.D. Iowa Sept. 10, 2025) (ordering bond hearing where DHS custody form identified § 1226).

44.    Moreover, the plain text of the INA confirms that mandatory detention under § 1225(b)(2)(A) applies only when several statutory conditions are satisfied. To trigger mandatory detention, the individual must qualify as an "applicant for admission," must also be "seeking admission" to the United States in the present tense, and must be determined by an immigration officer not to be "clearly and beyond a doubt entitled to be admitted." See *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025).

45.    Respondents attempt to collapse the statutory terms "applicant for admission" and "seeking admission" into one category, but courts have rejected this approach. In *Romero v. Hyde*, 2025 WL 2403827, at *10 (D. Mass. Aug. 19, 2025), the court emphasized that "the categories 'applicants for admission' and 'seeking admission' are not coterminous." Similarly, *Lopez Benitez v. Francis*, No. 25 CIV. 5937, 2025 WL 2371588, at 6 (S.D.N.Y. Aug. 13, 2025), explained that if Congress had intended to make all "applicants for admission" subject to § 1225(b)(2)(A), there would have been no reason to separately require that they also be "seeking admission."

46.     This statutory distinction is crucial. "Applicant for admission" is a legal status that may attach to a noncitizen already inside the United States who has not been formally admitted, see 8 U.S.C. § 1225(a)(1), but "seeking admission" refers to the present-tense act of attempting to enter the country. Courts have consistently recognized that individuals like Petitioner—who has resided in the United States for over two decades, has established U.S. citizen family members, and is pursuing relief before the Boston Immigration Court—are not "seeking admission" in the sense required for mandatory detention under § 1225(b)(2)(A). See *Romero*, 2025 WL 2403827, at *10; Martinez*, 2025 WL 2084238, at *6.

47.     The Supreme Court's guidance in *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018), reinforces this framework: "immigration law authorizes the Government to detain certain aliens seeking admission under §§ 1225(b)(1) and (b)(2), and to detain other aliens already in the country under § 1226." Petitioner falls squarely into the latter category.

48.     Accordingly, Petitioner's detention is discretionary under § 1226 and must include an individualized bond hearing within a reasonable time. This Court should order his immediate release, or alternatively transfer him to Massachusetts to restore counsel access and family support, or require a bond hearing within 24 hours.

## VI. EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

49.     Pursuant to Federal Rule of Civil Procedure 65 and this Court's inherent equitable authority, Petitioner respectfully moves for an emergency Temporary Restraining Order prohibiting Respondents from transferring him farther from this Court's jurisdiction and directing that, if he is not released, he remain within or be returned to the jurisdiction of the ICE Boston Field Office in Massachusetts while this Petition and his removal proceedings are pending before the Boston Immigration Court.

50.    The First Circuit has recognized that ICE transfer practices that sever access to retained counsel and obstruct the orderly adjudication of pending immigration cases raise grave constitutional concerns. *See Coronado Acevedo v. Garland*, 43 F.4th 171, 178–79 (1st Cir. 2022). Transferring Petitioner to a more remote facility — while his counsel, family, and immigration case are in Massachusetts — would undermine his meaningful access to the courts and his ability to seek lawful relief.

51.    Absent a restraining order, Respondents could move Petitioner to a distant facility, cutting off reliable attorney–client communication and effectively defeating this Court's habeas jurisdiction. Such a transfer would deprive him of the opportunity to seek termination of his administratively closed removal proceedings based on his approved I-130 petition, to apply for a Provisional Unlawful Presence Waiver (Form I-601A), and to complete consular processing for an immigrant visa. It would also inflict severe hardship on his family, including his postpartum spouse caring for newborn twins and a five-year-old alone.

## VII. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

a.   Issue a writ of habeas corpus directing Respondents to show cause why Petitioner's continued detention without an individualized custody determination does not comply with the Constitution and laws of the United States;

b.   Order Petitioner's immediate release under reasonable conditions of supervision pending resolution of his immigration proceedings;

c.   In the alternative, if immediate release is not granted, order Respondents to transfer Petitioner to a facility within Massachusetts under the authority of the ICE Boston Field Office to ensure meaningful access to counsel and his U.S. citizen family;

    d.  If transfer is not ordered, require Respondents to provide Petitioner an

individualized bond hearing pursuant to 8 U.S.C. § 1226(a) within 24 hours of this

Court's order;

Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice

Act, 28 U.S.C. § 2412; and

    e.  Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 3rd day of October, 2025.

Clarissa Moraes Kalil, Esq.
The Law Office of Clarissa M. Kalil
129 Concord St, Suite 1
Framingham, MA 01702
Tel: (857) 218-0400
MO Bar# 71440
MA Bar# 714777
*Counsel for Petitioner*

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner Uguimar Felipe Rezende (A# 208-748-768), and I submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Respectfully submitted this 3rd day of October, 2025.

Clarissa Moraes Kalil, Esq.
The Law Office of Clarissa M. Kalil
129 Concord St, Suite 1
Framingham, MA 01702
Tel: (857) 218-0400
MO Bar# 71440
MA Bar# 714777
*Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

I, undersigned counsel, hereby certify that on this date, I filed this Petition for Writ of Habeas Corpus and all attachments using the CM/ECF system. My co-counsel will furthermore mail a copy by USPS Certified Priority Mail with Return Receipts to each of the following individuals:

**Pamela Bondi, Attorney General**
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**Kristi Noem, Secretary**
U.S. Department of Homeland Security
c/o DHS Office of the General Counsel
2707 Martin Luther King Jr. Ave, SE
Washington, DC 20528-0485

**Patricia Hyde**
Acting Field Office Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement – Boston Field Office
1000 District Avenue
Burlington, MA 01803

**Warden of Buffalo Federal Detention Facility**
4250 Federal Dr.
Batavia, NY 14020

Respectfully submitted this 3rd day of October, 2025.

Clarissa Moraes Kalil, Esq.
The Law Office of Clarissa M. Kalil
129 Concord St, Suite 1
Framingham, MA 01702
Tel: (857) 218-0400
MO Bar# 71440
MA Bar# 714777
*Counsel for Petitioner*